1  MARGARET HART EDWARDS, Bar No. 65699
   JOSHUA D. KIENITZ, Bar No. 244903
2  LITTLER MENDELSON
   A Professional Corporation
3  650 California Street, 20th Floor
   San Francisco, CA  94108.2693
4  Telephone:    415.433.1940
   Facsimile:    415.358.4566
5
6  Attorneys for Defendant
   GEORGIA-PACIFIC LLC
7

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10

11  EQUAL EMPLOYMENT                 Case No.  C 07 3944 SBA
    OPPORTUNITY COMMISSION,
12                                   DEFENDANT GEORGIA-PACIFIC LLC'S
                  Plaintiff,         OPPOSITION TO CHARGING PARTY
13                                   JANET STEGE'S MOTION TO
         v.                          INTERVENE
14
    GEORGIA-PACIFIC LLC,             Date:        March 4, 2008
15                                   Time:        1:00 p.m.
                  Defendant.         Courtroom:   3
16                                   Judge:       The Hon. Saundra B. Armstrong

17

18

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

DEF'S OPPOSITION TO CHARGING          Case No. C 07 3944 SBA
PARTY'S MOTION TO INTERVENE

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ................................................................................................1

II.   STATEMENT OF FACTS ...................................................................................2

    A.    Stege's Work History At Georgia-Pacific................................................2

    B.    In April 2004, Georgia-Pacific Gave Stege The Option Of Continuing Employment At The New San Leandro Plant, With The Understanding That She Would, On Occasion, Be Required To Work Mandatory Overtime...................2

    C.    In November 2004, Stege Timely Filed An EEOC/DFEH Charge Based On The Events Of April 2004. ................................................................3

    D.    The EEOC Investigated Stege's Charge Until March 2005 And Attempted To Conciliate With Georgia-Pacific Until June 2005. .....................................3

    E.    After Many Of The Individuals Involved In The Events Of April 2004 Had Left The Company, Stege Requested And Received A Reasonable Accommodation In February 2006...........................................................4

    F.    Stege's February 2006 Reasonable Accommodation ..............................5

    G.    Stege Has Taken More Than Seven Months Of Leave Since December 1, 2004, When She Received The Right-To-Sue Letter. ...............................6

    H.    Twenty-Six Months After The End Of Conciliation, The EEOC Filed The Instant Lawsuit In August 2007. .......................................................6

    I.    Forty-Five Months After The "Ultimatum," 38 Months After She Filed Her EEOC Charge, 37 Months After She Received Her Right-To-Sue Letter, And 31 Months After She Was Informed That Conciliation Had Been Unsuccessful, Stege Filed The Instant Motion To Intervene. ...................6

    J.    Corrugated Is Stege's Employer; Holdings Is Not. ................................7

III.  LEGAL ARGUMENT .........................................................................................7

    A.    Stege's Motion Is Barred By The Applicable Statute Of Limitations. .......7

        1.    Stege's FEHA Claims Were Equitably Tolled During The Pendency Of The EEOC's Investigation, Determination And Conciliation Process, Which Ended On Or Before June 9, 2005. .....................................7

        2.    Stege Has A Right To Intervene In This Action But No Right To Bring Claims Otherwise Barred By The SOL. ......................................9

        3.    Stege's FEHA Claims May Not Be Tolled Under A "Continuing Violation" Theory. ...........................................................10

    B.    Stege's Motion Is Barred By The Doctrine Of Laches............................11

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

DEF'S OPPOSITION TO CHARGING
PARTY'S MOTION TO INTERVENE

i.

**TABLE OF CONTENTS**
(continued)

Page

      1.    The EEOC Filed Its Complaint After An Unreasonable Delay Of More Than 26 Months After The Close Of Conciliation; Stege Delayed For 31 Months. ..................................................................................................12

C.    Georgia-Pacific Suffered Prejudice As A Result Of The EEOC's And Stege's Unreasonable Delay. ..........................................................................................13

D.    Stege's Motion To Intervene Against Defendant Georgia-Pacific Holdings, LLC Should Be Denied Because Georgia-Pacific Holdings, LLC Has Never Been Stege's Employer. ....................................................................................15

      1.    Corrugated Is Stege's Employer Under The Economic Reality Test. ...........15

      2.    Corrugated Is Stege's Employer Under The Single Employer Test. .............16

E.    Stege Has No Facts To Show That Holdings Is The Alter Ego Of Corrugated. ........18

IV.    CONCLUSION ..............................................................................................22

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEF'S OPPOSITION TO CHARGING
PARTY'S MOTION TO INTERVENE

ii.

Case No. C 07 3944 SBA

# TABLE OF AUTHORITIES

**PAGE**

## CASES

American Telephone & Telegraph Co. v. Compagnie Bruxelles Lambert,
94 F.3d 586 (9th Cir. 1996) .................................................................................20

Assoc. Vendors, Inc. v. Oakland Meat Co.,
210 Cal. App. 2d 825 (1962) ...............................................................................19

Bell Atlantic Bus. Sys. Servs. v. Hitachi Data Sys. Corp.,
849 F. Supp. 702 (N.D.Cal. 1994) .......................................................................19

Bonnette v. California Health & Welfare Agency,
704 F.2d 1465 (9th Cir. 1983) .............................................................................16

Boone v. Mechanical Specialties Co.,
609 F.2d 956 (1979) ............................................................................... 11, 13, 14

Brown-Mitchell v. Kansas City Power & Light Co.,
267 F.3d 825  (8th Cir. 2001) ..............................................................................11

Catani v. Chiodi,
2001 WL 920025, *3-5 (D.Minn. Aug. 13, 2001) ...............................................21

Cellini v. Harcourt Brace & Co.,
51 F. Supp 2d 1028 (S.D. Cal. 1999) ...................................................................18

Chao v. A-One Medical Servs., Inc.,
346 F.3d 908 (9th Cir. 2003) ...............................................................................16

Daniels v. Kerr McGee Corp.,
841 F. Supp. 1133 (D. Wyo. 1993) ......................................................................21

Danjaq LLC v. Sony Corp.,
263 F.3d 942 (9th Cir. 2001) ................................................................. 12, 13, 14

Doe v. Unocal Corp.,
248 F.3d 915 (9th Cir. 2001) .........................................................................20, 21

Doney v. TRW, Inc.,
33 Cal. App. 4th 245 (1995) .................................................................................19

Downs v. Department of Water & Power,
58 Cal. App. 4th 1093 (1997) ..........................................................................8, 11

EEOC v. Alioto Fish Company, Ltd.,
623 F.2d 86 (9th Cir. 1980) .................................................................... 11, 12, 13

EEOC v. Bell Helicopter,
426 F. Supp. 785 (N.D. Tex. 1976)) ....................................................................12

EEOC v. Firestone Tire and Rubber Co.,
626 F.Supp. 90 (M.D. Ga., 1985) .....................................................................8, 12

EEOC v. Liberty Loan Corp.,
584 F.2d 853 (8th Cir. 1978)) ..............................................................................12

Fidenas AG v. Honeywell, Inc.,
501 F. Supp. 1029 (S.D.N.Y. 1980) .....................................................................21

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

DEF'S OPPOSITION TO CHARGING
PARTY'S MOTION TO INTERVENE

iii.

Case No. C 07 3944 SBA

1

## TABLE OF AUTHORITIES
### (CONTINUED)

2

PAGE

3

*Frank v. U.S. West, Inc.*,
  3 F.3d 1357 (10th Cir. 1993) ................................................................................ 15, 17, 18

4

*Heath v. AT & T Corp.*,
  2005 WL 2206498, *7 (N.D. Cal., 2005) ........................................................................ 8

5

*Institute of Veterinary Pathology, Inc. v. Cal. Health Labs.*,
  116 Cal. App. 3d 111 (1981) ................................................................................. 19, 20

6

*International T. & T. Corp. v. General T. & E. Corp.*,
  518 F.2d 913 (9th Cir. 1975)) ................................................................................... 11

7

*Isenberg v. Calif. Emp. Stabilization Comm'n*,
  30 Cal. 2d 34 (1947)) ................................................................................................ 16

8

*Johnson v. City of Loma Linda*,
  24 Cal. 4th 61 (2000) ............................................................................................... 11

9

10

*Kasprzak v. Amer. Gen. Life & Acc. Ins. Co.*,
  914 F. Supp. 144 (E.D. Tex. 1996) ............................................................................ 21

11

*Kramer Motors, Inc. v. British Leyland, Ltd.*,
  628 F.2d 1175 (9th Cir. 1980) ................................................................................... 20

12

*Laird v. Capital Cities/ABC, Inc.*,
  68 Cal. App. 4th 727 (1998) ........................................................................ 15, 16, 17, 18

13

*Las Palmas Assocs. v. Las Palmas Ctr. Assocs.*,
  235 Cal. App. 3d 1220 (1991) ................................................................................... 18

14

15

*Lockard v. Pizza Hut, Inc.*,
  162 F.3d 1062 (10th Cir. 1998) ................................................................................. 18

16

*M/V American Queen v. San Diego Marine Constr. Corp.*,
  708 F.2d 1483 (9th Cir. 1983) ................................................................................... 20

17

*Mason v. Burkett*,
  756 F.Supp. 679 (D. Conn. 1991) .............................................................................. 21

18

*Mathieu v. Norrell Corp.*,
  115 Cal. App. 4th 1174 (2004) .................................................................................... 8

19

20

*Mayfield v. Sara Lee Corp.*,
  2005 U.S. Dist. LEXIS 42458, at *7 (N.D. Cal. Jan. 13, 2005) ...................................... 18

21

*Mesler v. Bragg Mgmt. Co.*,
  39 Cal.3d 290 (1985)) ............................................................................................... 18

22

*Mid-Century Ins. Co. v. Gardner*,
  9 Cal. App. 4th 1205 (1992) ...................................................................................... 18

23

*Pruitt v. City of Chicago, Illinois*,
  472 F.3d 925 (7th Cir. 2006) ..................................................................................... 13

24

25

*Richards v. CH2M Hill, Inc.*,
  26 Cal.4th 798 (2001) .............................................................................................. 10

26

*Roman Catholic Archbishop v. Super. Ct.*,
  15 Cal. App. 3d 405 (1971) ................................................................................... 19, 20

27

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

DEF'S OPPOSITION TO CHARGING
PARTY'S MOTION TO INTERVENE

iv.

1

2

**TABLE OF AUTHORITIES**
(CONTINUED)

PAGE

3

*Salgado v. Atlantic Richfield Co.*,
   823 F.2d 1322 (9th Cir. 1987) ..................................................................8

4

*Say & Say, Inc. v. Ebershof*,
   20 Cal. App. 4th 1759 (1993) ..................................................................18

5

*Singh v. 7-Eleven, Inc.*,
   2007 WL 715488, at *7 (N.D. Cal. Mar. 8, 2007) ...................................16

6

*Sonora Diamond Corp. v. Super. Ct.*,
   83 Cal. App. 4th 523 (2000) ....................................................................19

7

*Tomaselli v. Transamerica Ins. Co.*,
   25 Cal. App. 4th 1269 (1994) ............................................................19, 20

8

*Tran v. Farmers Group, Inc.*,
   104 Cal. App. 4th 1202 (2002) ................................................................19

9

10

*United States v. Bestfoods*,
   524 U.S. 51 (1998) ...................................................................................21

11

*Von Grabe v. Sprint PCS*,
   312 F. Supp. 2d 1285 (S.D. Cal. 2003) ...................................................21

12

*Walker v. Signal Cos., Inc.*,
   84 Cal. App. 3d 982 (1978) .....................................................................20

13

*Wickham v. Southland Corp.*,
   168 Cal. App. 3d 49 (1985) .....................................................................16

14

15

*Yanowitz v. L'Oreal USA, Inc.*,
   36 Cal. 4th 1028 (2005) ...........................................................................10

16

**STATUTES**

17

29 C.F.R § 791.2(b) ......................................................................................16

18

42 U.S.C. § 2000e-5(f)(1) ...........................................................................4, 9

19

Cal. Code Regs., tit. 8 § 11040(2)(H) ..........................................................16

20

Cal. Gov't Code § 12965 ......................................................................3, 7, 8, 9

21

22

23

24

25

26

27

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

DEF'S OPPOSITION TO CHARGING
PARTY'S MOTION TO INTERVENE

v.

1

## I.     INTRODUCTION

Charging Party Janet Stege's ("Stege") motion is untimely.  She seeks to intervene in this action more than three years (37 months) after she received a right-to-sue letter from the Department of Fair Employment and Housing ("DFEH") and more than two-and-a-half years (31 months) after the EEOC completed its investigation, determination, and conciliation efforts and notified both Stege and Georgia-Pacific Corporation of the same.  The EEOC, for its part, waited more than two years (26 months) after the close of conciliation to file its complaint.

Stege's state law claims ("FEHA claims") are now barred by the applicable SOL. That the EEOC filed an untimely complaint does not resurrect Stege's state cause of action.  Stege's FEHA claims were tolled only during the pendency of the EEOC's investigation, determination, and conciliation, all of which had officially ended by June 9, 2005, when the EEOC declared such efforts "futile".  As discussed below, Stege had, at most, until June 9, 2006 to file her own action alleging FEHA claims, but failed to do so.

The EEOC's claim is barred by the doctrine of laches.  By filing her Motion to Intervene and Complaint in Intervention (together, "Motion") not until the eve of her own deposition, Stege compounds unreasonable delay upon unreasonable delay.  Thus, Stege's Motion is, *a fortiori*, barred by laches.

Moreover, Stege's Motion names as a defendant an entity that is not (and never has been) Stege's employer.  Georgia-Pacific Corrugated, LLC ("Corrugated") is Stege's employer and is the only proper defendant in this action (assuming, *arguendo*, that the Motion were not barred by laches and the SOL).  Georgia-Pacific Holdings, LLC ("Holdings"), the indirect parent of Corrugated, has never been Stege's employer.  Stege cannot show that Holdings ever had any connection with her employment or engaged in any conduct toward her.  Thus, Holdings can have no *direct* liability on any of the Stege's employment-related claims.  Further, in order for a parent corporation to have *derivative* liability for the conduct of a subsidiary, it must be established that the parent is the "alter ego" of the subsidiary.  Here, Stege cannot establish, nor has she alleged, that Holdings is an alter ego of Corrugated.  Thus, Holdings can have no derivative liability on any of Stege's claims.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEF'S OPPOSITION TO CHARGING
PARTY'S MOTION TO INTERVENE

1.

Case No. C 07 3944 SBA

1    For all of the foregoing reasons, this Court should deny Stege's Motion.

2    **II.    STATEMENT OF FACTS**

3        **A.    Stege's Work History At Georgia-Pacific**

4        Stege was hired at Georgia-Pacific's ("GP") South San Francisco corrugated box

5    plant almost 20 years ago. (*See* Complaint in Intervention ¶¶ 9-10).  At the South San Francisco

6    plant, Stege worked as a Stacker Operator, a Taper Operator, a General Floor Worker, an Equalok

7    Assistant Operator, and a Press-Flexo Assistant Operator, often also serving as a "Rover" because of

8    her knowledge of a variety of positions. (Declaration of Curtis Kimbro ("Kimbro Decl") ¶ 2.)  From

9    approximately April 2001 until the closure of the South San Francisco plant in April 2004, Stege

10   worked as a janitor. (*Id.*)  Stege asserts that, at her request, she was accommodated with a 40-hour

11   per week work restriction during the last several years of her employment at the South San Francisco

12   plant. (*Id.*; *see also* Declaration of Margaret Hart Edwards ("Edwards Decl."), Exh. A (Stege's

13   EEOC charge)).  The janitor position Stege held from 2001 to 2004 was part of the accommodation

14   GP provided to Stege: unlike production line positions, the janitor position did not require

15   mandatory overtime, pursuant to the collective bargaining agreement ("CBA") in place at the time

16   between GP and the Graphic Communications International Union. (Kimbro Decl. ¶ 2).

17       **B.    In April 2004, Georgia-Pacific Gave Stege The Option Of Continuing
18           Employment At The New San Leandro Plant, With The Understanding That
             She Would, On Occasion, Be Required To Work Mandatory Overtime.**

19       Stege and the EEOC allege that, in early April 2004, South San Francisco plant

20   manager Joe McGovern told Janet Stege that she would not be granted a strict 40-hour per week

21   schedule when she began working at the new San Leandro plant. (Edwards Decl. Exhs. A, B; *see*

22   *also* Complaint In Intervention at ¶ 12; Joint Case Management Statement at p. 2, "According to the

23   EEOC").  Stege and the EEOC further allege that, on April 12, 2004, McGovern and HR manager

24   Aaron Ybarrondo gave Stege the option of accepting continued employment at the new San Leandro

25   plant, with the understanding that Stege would be required, on occasion, like all other union-

26   represented employees, to work overtime. (*Id.*)  Stege chose to accept employment at the new San

27   Leandro plant without a 40-hour per week work restriction and, on April 14, 2004, obtained a note

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

DEF'S OPPOSITION TO CHARGING
PARTY'S MOTION TO INTERVENE                2.                Case No. C 07 3944 SBA

1  from her physician, releasing her 40-hour per week work restriction.[1] (*Id.*; Exh. B).  Starting in April

2  2004 and continuing to the present, Stege has been required, on occasion, to work overtime pursuant

3  to the CBA.  (Kimbro Decl. ¶ 3).  She has continued to be given a swing shift, per her request.  (*Id.*)

4  **C.    In November 2004, Stege Timely Filed An EEOC/DFEH Charge Based On The
        Events Of April 2004.**

5

6          Seven months later, on November 24, 2004, Stege filed a charge with the EEOC (and

7  the DFEH, pursuant to a work-sharing agreement), alleging that GP had discriminated against Stege

8  because GP had revoked or discontinued Stege's 40-hour restriction in April 2004.  (Edwards Decl.,

9  Exh. A).  The DFEH issued Stege a right-to-sue letter on December 1, 2004, informing Stege that

10  the EEOC would be investigating the charge and that Stege had one year to file her own civil action

11  alleging FEHA claims.  (*Id.*, Exh. C).  The letter emphasized: "This Right-To-Sue Notice allows you

12  to file a private lawsuit in State court."  (*Id.*)  Citing Government Code section 12965, the letter

13  informed Stege this one-year period would be tolled "during the pendency of the EEOC's

14  investigation."  (*Id.*)  Finally, the letter cautioned that the "DFEH does not retain case records

15  beyond three years after a complaint is filed."  (*Id.*)

16  **D.    The EEOC Investigated Stege's Charge Until March 2005 And Attempted To
        Conciliate With Georgia-Pacific Until June 2005.**

17

18          GP filed its position statement with the EEOC on January 12, 2005.  (Edwards Decl.,

19  Exh. D).  The EEOC conducted its investigation in early 2005, interviewing several witnesses,

20  including: former Plant Manager and Shift Superintendent Joe McGovern (March 7, 2005); former

21  Shift Superintendent Mike Belmessieri (January 25, 2005); former union steward Ron Orr (February

22  14, 2005); and former employee Albert Conrad (February 14, 2005).  (*Id.* ¶ 3).  On March 24, 2005,

23  after the investigation had concluded, the EEOC issued its Letter of Determination, informing GP

24  "there is reasonable cause to believe that your organization has discriminated against" Stege and

25  inviting GP to "participate in the conciliation process."        (Declaration of Amy McDonald

26  ("McDonald Decl."), Exh. A).

27          On June 9, 2005, the EEOC issued a letter informing GP that the conciliation process

28  _____

[1] Stege's physician's note referred to the conversations of early April 2004 as constituting an "ultimatum".

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

DEF'S OPPOSITION TO CHARGING
PARTY'S MOTION TO INTERVENE        3.        Case No. C 07 3944 SBA

1   had been "unsuccessful" and that "further conciliation efforts would be futile[.]" (*Id.*, Exh. B).

2   Having concluded its investigation, determination, and conciliation efforts, the EEOC stated that the

3   matter was being forwarded to Regional Attorney William Tamayo for "litigation review." (*Id.*)

4          The EEOC was required also to provide such notification[2] to Stege, pursuant to 42

5   U.S.C. § 2000e-5(f)(1), which provides, in relevant part: "if within one hundred and eighty days

6   from the filing of such charge ... the Commission has not filed a civil action under this section <u>or</u> ...

7   has not entered into a conciliation agreement to which the person aggrieved is a party, the

8   Commission ... <u>shall</u> so notify the person aggrieved and within ninety days after the giving of such

9   notice a civil action may be brought against the respondent named in the charge ... by the person

10  claiming to be aggrieved[.]" (emphasis supplied).

11  **E.     After Many Of The Individuals Involved In The Events Of April 2004 Had Left
12          The Company, Stege Requested And Received A Reasonable Accommodation In
        February 2006.**

13         Both Joe McGovern and Ron Huff, the former Plant Manager and General Manager,

14  respectively, left GP more than two years ago.  (Kimbro Decl. ¶ 4).  The same is true for Ron Orr,

15  former union steward, and Cheryle Webb-Nelson, former HR Manager.  (*Id.*)  Aaron Ybarrondo, the

16  HR Manager who was involved in the so-called April 2004 "ultimatum," moved from the area more

17  than two years ago and now works for GP in Georgia.  (*Id.*)  One of Stege's former supervisors,

18  former Shift Superintendent Mike Belmessieri, has been on extended medical leave and has not

19  worked regularly at Corrugated since serving as a juror in the Scott Peterson trial in summer 2004.

20  (*Id.*)

21         The current superintendent for Corrugated's San Leandro plant is Alex Reyes.

22  (Kimbro Decl. ¶ 5).  The current HR Manager for the San Leandro plant is Curtis Kimbro.[3]  (*Id.*)

23  Neither Kimbro, Yeager, nor Reyes were directly involved in the events of April 2004, when Stege

24  says that she was told unequivocally that, in order to work at the San Leandro plant, she would be

25

26  ---
    [2] Defendant does not have a copy of the letter by which the EEOC informed Stege of the close of conciliation.
    On January 14, 2008, immediately after being served with Stege's motion to intervene (January 12 and 13
27  were weekend days), Defendant served a supplemental Request for Production of Documents on the EEOC,
    specifically requesting a copy of this letter.  (Edwards Decl. ¶ 5).
28  [3] Bill Yeager is an Area HR Manager, who provides services to the San Leandro plant and other Northern
    California facilities.  (Declaration of Bill Yeager ("Yeager Decl.") ¶ 1).

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEF'S OPPOSITION TO CHARGING                    4.                    Case No. C 07 3944 SBA
PARTY'S MOTION TO INTERVENE

1  required, on occasion, like all other employees, to work overtime pursuant to the CBA.  (*Id.*)  Reyes

2  and Yeager do, however, have first-hand knowledge of Stege's February 2006 request for reasonable

3  accommodation and Corrugated's response.  (*See* Yeager Decl. ¶¶ 2-4).

4  **F.    Stege's February 2006 Reasonable Accommodation**

5          On February 9, 2006, while employed as a Strapper Operator, Stege gave Reyes a

6  handwritten note indicating that her job was "exasperating" her medical condition.   (Yeager Decl. ¶

7  2, Exh. A).   In this letter, Stege requested, as a "reasonable accommodation," either: (1) that

8  Corrugated fix the equipment on which Stege was working; or (2) that Corrugated transfer Stege to

9  another machine.  (*Id.*)

10         In response, Corrugated and Stege discussed possible options for a reasonable

11  accommodation for Stege.  (*Id.*)   On February 17, 2006, Stege and Corrugated signed a letter

12  agreement (also signed by chief union steward Raymond Murray) memorializing that Stege had

13  expressed a desire to move to the Cascader Department and that Corrugated and Stege agreed that

14  Stege could perform all the essential functions of that job without adversely affecting her medical

15  condition.  (*Id.* ¶ 3, Exh. B).  Stege chose the Assistant Operator position over the Rover position.

16  (*Id.*)   The letter memorialized the fact that Stege "requested the transfer during an interactive

17  conversation about [her] request for a reasonable accommodation, and that [Stege] agree[d] to the

18  terms of the transfer."  Stege was invited to contact her supervisor if she had any difficulties in the

19  Cascader Department.  (*Id.*)

20         Neither Stege's February 9, 2006 request for reasonable accommodation nor GP's

21  February 17, 2006 response addresses mandatory overtime or 40-hour per week restrictions.  (*Id.*)

22  Stege, Corrugated, and the Union understood that that the mandatory overtime question had been

23  settled, for better or worse, in April 2004.  (*Id.* ¶ 4)

24  ///

25  ///

26  ///

27  ///

28  ///

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEF'S OPPOSITION TO CHARGING
PARTY'S MOTION TO INTERVENE                  5.                  Case No. C 07 3944 SBA

1  **G.    Stege Has Taken More Than Seven Months Of Leave Since December 1, 2004, When She Received The Right-To-Sue Letter.**

2

3      As her only source of potential back pay liability, Stege alleges that she lost income

4  because Corrugated's mandatory overtime policy aggravated her medical condition to the point that

5  she was forced to take medical leaves of absence — notwithstanding the fact that Stege has received

6  at least $600.00 per week (roughly $15.00 per hour) while on leave. (*See* Complaint In Intervention

7  at ¶ 13, Prayer at ¶ 1; Kimbro Decl. ¶ 6). Since December 1, 2004, when she received the right-to-

8  sue letter, Stege has taken more than seven months of leave. (Kimbro Decl. ¶ 6). Since the end of

9  the conciliation process on June 9, 2005, Stege has taken more than four months of leave. (*Id.*)

10  **H.    Twenty-Six Months After The End Of Conciliation, The EEOC Filed The Instant Lawsuit In August 2007.**

11

12      The EEOC filed the instant lawsuit in August 1, 2007. In its complaint, the EEOC

13  offered no justification for — nor any discussion of — the 26-month chasm separating the end of

14  conciliation and the filing of the complaint. In its Answer, filed October 1, 2007, GP asserted, in

15  relevant part, that the EEOC's claims were barred because of: (1) laches; (2) unclean hands; (3)

16  waiver; (4) estoppel; and (5) no current threat of irreparable harm. Further, GP expressly and

17  repeatedly indicated that that the EEOC had sued an entity other than Stege's employer

18  (Corrugated).

19  **I.    Forty-Five Months After The "Ultimatum," 38 Months After She Filed Her EEOC Charge, 37 Months After She Received Her Right-To-Sue Letter, And 31 Months After She Was Informed That Conciliation Had Been Unsuccessful, Stege Filed The Instant Motion To Intervene.**

20

21

22      Stege filed the instant motion to intervene on January 10, 2008. Like the EEOC,

23  Stege offered no justification for the 31-month gap between the end of conciliation and the filing of

24  her Motion.[4] In fact, Stege did not even meet with attorney Kathryn Dickson until December 28,

25  2007. (Declaration of Kathryn Dickson ¶ 3). Significantly — and particularly surprising, given the

26  ─────────────────

[4] Stege correctly asserts that the SOL for her FEHA claims was tolled during the EEOC's investigation and
27  conciliation efforts (which had ended by June 9, 2005). (Complaint In Intervention ¶ 17). Stege then makes a
26-month leap to the conclusion that her FEHA claims were also tolled during the pendency of the EEOC's
"timely" filed action. (*See id.*) In her Memorandum of Points and Authorities, Stege also fails to justify — or
28  even mention — these 26 months.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940
DEF'S OPPOSITION TO CHARGING
PARTY'S MOTION TO INTERVENE        6.        Case No. C 07 3944 SBA

failure-to-reasonably-accommodate claims at issue — there is no mention in the Motion of the fact that Stege requested and received a reasonable accommodation in February 2006.

### J.    Corrugated Is Stege's Employer; Holdings Is Not.

Only Corrugated has the power to hire and fire employees at the San Leandro plant, including Stege. (Yeager Decl. ¶ 5). Likewise, only Corrugated has the power to determine Stege's work schedule and compensation. (*Id.*) All day-to-day operations at Corrugated's San Leandro plant are controlled by managers at the Corrugated facility. (*Id.*) None of the managers at the San Leandro plant are employees of Holdings. (*Id.*) Corrugated maintains Stege's employment records. Holdings plays no role in any of these actions. (*Id.*)

Holdings is the indirect sole equity holder of Corrugated and other subsidiaries. (Declaration of Stefanie Box ("Box Decl.") ¶ ¶ 3). Corrugated and Holdings each keep separate corporate minutes and records. (*Id.*) Each entity has its own business licenses and respective taxpayer identification numbers. (*Id.*) Further, Corrugated and Holdings were incorporated at different times. (*Id.*) Other than activities associated with it being a holding company for a consolidated group, Holdings does not engage in any business or other activity. (*Id.*) Holdings has no employees. (*Id.*)

Corrugated is adequately capitalized and has sufficient liquid assets to satisfy a judgment of the magnitude sought by Stege. (*Id.* at ¶ 4)

The EEOC and Corrugated have entered into a stipulation that Corrugated, as Stege's only employer, is the only proper defendant in this action and have agreed that the EEOC's Complaint may be amended to include Georgia-Pacific Corrugated, LLC and to dismiss Georgia-Pacific, LLC. (Edwards Decl. ¶ 4).

## III.    LEGAL ARGUMENT

### A.    Stege's Motion Is Barred By The Applicable Statute Of Limitations.

#### 1.    Stege's FEHA Claims Were Equitably Tolled During The Pendency Of The EEOC's Investigation, Determination And Conciliation Process, Which Ended On Or Before June 9, 2005.

Government Code section 12965 provides that the SOL for Stege's FEHA claims is one year from the issuance of a right-to-sue notice (December 1, 2004, in this case). Section 12965

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEF'S OPPOSITION TO CHARGING
PARTY'S MOTION TO INTERVENE

7.

Case No. C 07 3944 SBA

1   further provides that the SOL for FEHA claims arising from a charge filed jointly with the EEOC

2   and the DFEH, which charge is investigated solely by the EEOC, is tolled during the pendency of

3   the EEOC investigation.[5]  The SOL "expires when the federal right-to-sue period to commence a

4   civil action expires, or one year from the date of the right-to-sue notice by the Department of Fair

5   Employment and Housing, whichever is later."

6          Section 12965 expressly provides that it is intended to codify the holding of *Downs v.*

7   *Department of Water & Power*, 58 Cal. App. 4th 1093, 1102-03 (1997), which provides, in relevant

8   part (emphasis supplied):

9          If the one-year statute were not tolled, a plaintiff would often be
           compelled to pursue a state law action <u>before the EEOC had</u>
10         <u>completed its investigation</u>. If the EEOC issued an accusation or
           achieved conciliation, the state law action would become redundant or
11         moot. Tolling the one-year statute for bringing the FEHA action <u>until</u>
           <u>the EEOC completes its determination</u> provides a defendant with
12         notice of the charges, but relieves a plaintiff from pursuing duplicative
           actions simultaneously on the same set of facts. Moreover, disposition
13         of a case by the EEOC may render a state court action unnecessary or
           easier and less expensive to resolve.
14

15  (citing *Salgado v. Atlantic Richfield Co.*, 823 F.2d 1322, 1325-26 (9th Cir. 1987) (plaintiff's FEHA

16  claims may be tolled during "the EEOC's processing of his claims" in order to allow the EEOC "to

17  give notice to employers charged with a violation and to undertake efforts at conciliation").  The

18  EEOC's investigative "process" ends when the EEOC abandons conciliation efforts.  *See EEOC v.*

19  *Firestone Tire and Rubber Co.*, 626 F.Supp. 90, 94 (M.D.Ga., 1985).

20         In the present matter, the facts demonstrate that the EEOC had "completed its

21  investigation" by March 2005.  By March 24, 2005, the EEOC had "complete[d] its determination"

22  that there was reasonable cause to pursue Stege's charge.  This gave GP notice that it was "charged

23  with a violation" and allowed the EEOC "to undertake efforts at conciliation," a process which had

24  proved "futile" by June 9, 2005.  Thus, the tolling of the FEHA SOL ended on of June 9, 2005.

25         The EEOC may argue that equitable tolling continued for the next 26 months because

26

27  ―――――――――――
    [5] By contrast, a plaintiff's common law employment claims are not tolled during an EEOC investigation.
    *Mathieu v. Norrell Corp.*, 115 Cal. App. 4th 1174, 1189 (2004) (citations omitted); *see also Heath v. AT & T*
28  *Corp*., 2005 WL 2206498, *7 (N.D. Cal., 2005) (same).

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

1    it was still "processing" Stege's claim.   Such argument is unavailing, in light of the case law which

2    expressly includes investigation, determination, and conciliation — but not years-long, post-

3    conciliation rumination[6] — within the EEOC's "processing" of claims.  Defendant does not dispute

4    that the EEOC, with its limited resources, is entitled to move deliberately when deciding whether to

5    investigate a charge.  Likewise, once the EEOC has commenced an investigation, there is no doubt

6    that Congress intended that the EEOC be able to move deliberately before deciding whether to issue

7    a determination of reasonable cause.  Lastly, in furtherance of the public policy favoring out-of-court

8    dispute resolution, the EEOC may proceed deliberately when attempting to conciliate a charge.

9    There is nothing, however, to suggest that, once the investigation, determination, and conciliation of

10   a charge have been completed, the EEOC may engage in perpetual "processing" of the charge and

11   thereby forever toll the SOL for both itself and for the charging party.

12                    **2.      Stege Has A Right To Intervene In This Action But No Right To Bring
                              Claims Otherwise Barred By The SOL.**
13

14                    It is undisputed that a charging party may intervene in an EEOC action.  *See, e.g.,*

15   *General Tel. Co. of the Northwest, Inc. v. EEOC*, 446 U.S. 318, 326 (1980).  But Stege may not

16   bring FEHA claims, which are barred by the applicable SOL.  The statutory provision cited by Stege

17   in support of her assertion that she may intervene as a matter of right, 42 U.S.C. 2000e-5(f)(1), also

18   provides as follows:

19                    [I]f within one hundred and eighty days from the filing of [a] charge ...
                      the Commission has not filed a civil action under this section or ... has
20                    not entered into a conciliation agreement to which the person
                      aggrieved is a party, the Commission ... shall so notify the person
21                    aggrieved and within ninety days after the giving of such notice a civil
                      action may be brought against the respondent named in the charge ...
22                    by the person claiming to be aggrieved[.]"

23   As of June 9, 2005, approximately 180 days from the filing of the charge, the EEOC determined that

24   it had failed to reach a conciliation agreement with GP.  Accordingly, under section 2000e-5(f)(1),

25   Stege had 90 days (until September 8, 2005) to bring her own claim.  California Government Code

26   section 12965 provides that a charging party's SOL for FEHA claims "expires when the federal

27

28   _____
     [6] This use of this term assumes, *arguendo*, that some intra-agency deliberation actually occurred during these
     26 months.   Neither the EEOC nor Stege has put forth evidence of any such alleged "processing."

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

DEF'S OPPOSITION TO CHARGING
PARTY'S MOTION TO INTERVENE                    9.                    Case No. C 07 3944 SBA

1  right-to-sue period to commence a civil action expires, or one year from the date of the right-to-sue

2  notice by the Department of Fair Employment and Housing, whichever is later."   Under this

3  provision, therefore, Stege had until December 1, 2005 to bring her own FEHA claims based on the

4  "ultimatum" of April 2004.

5          3.      **Stege's FEHA Claims May Not Be Tolled Under A "Continuing Violation" Theory.**

6

7          An employee may not unreasonably delay the filing of a lawsuit based on the

8  employer's alleged failure to reasonably accommodate her disability because such delay "would be

9  contrary to the FEHA's statute of limitations and potentially prejudicial to the employer."  *Richards*

10 *v. CH2M Hill, Inc.*, 26 Cal.4th 798, 822 (2001).  When an employer makes clear that it will not grant

11 an employee's request for accommodation, "justification for delay in taking formal legal action no

12 longer exists."  *Id.*  At that point, "the employee is on notice that litigation, not informal conciliation,

13 is the only alternative for the vindication of his or her rights" and "the statute of limitations for the

14 violation begins to run.  *Id.*  The continuing violation doctrine is inapplicable when the employee is

15 "on notice that further conciliatory efforts would be futile."  *See Yanowitz v. L'Oreal USA, Inc.*, 36

16 Cal.4th 1028,1059 (2005) (*citing Richards*, 26 Cal.4th at 823).

17         In the instant matter, the accommodation sought by Stege (and denied in April 2004)

18 which formed the sole basis for her November 2004 charge of discrimination, was the ability to

19 work only 40 hours per week.  Stege alleges that GP unequivocally informed her in April 2004 that

20 she would be required, like all other employees, periodically to work overtime pursuant to the CBA.

21 On April 12, 2004, Stege was given the choice of accepting a severance package or agreeing to work

22 mandatory overtime.  On April 15, 2004, Stege went to her physician and had her 40-hour per week

23 restriction lifted.  Since April 2004, Stege has been required to work periodic overtime, consistent

24 with the fact that she no longer has a 40-hour restriction.

25         Stege filed a charge with the EEOC, which investigated the matter and attempted to

26 conciliate on Stege's behalf.  Stege has been on notice since June 9, 2005 that "further conciliation

27 efforts would be futile."  (*See* McDonald Decl., Exh. B ("further conciliation efforts would be futile"

28 as of June 9, 2005)).

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

DEF'S OPPOSITION TO CHARGING
PARTY'S MOTION TO INTERVENE            10.            Case No. C 07 3944 SBA

1   To be sure, Stege has continued to seek — and to receive — other reasonable
2   accommodations, as described in the February 2006 letter agreement.  However, this letter says
3   nothing about mandatory overtime or Stege's pre-April 2004 40-hour work schedule.  That matter
4   was settled in April 2004, when GP made a decision that it could not allow Stege a strict 40-hour per
5   week schedule and informed Stege of the same.  GP has not wavered from the position it took in
6   April 2004.

7   Thus, assuming, *arguendo*, that the continuing violation doctrine was applicable at
8   any time, it would have applied only until June 9, 2005, when "further conciliation efforts would
9   [have been] futile," after which point the FEHA statute of limitations began to run.  The very latest
10  Stege could have filed her FEHA claims was June 9, 2006 — the instant Motion is 17 months late.

11  **B.    Stege's Motion Is Barred By The Doctrine Of Laches.**

12  Laches is an equitable limitation which bars an action where a party's unexcused or
13  unreasonable delay has prejudiced its adversary.  *Boone v. Mechanical Specialties Co.*, 609 F.2d
14  956, 958 (1979) (*citing International T. & T. Corp. v. General T. & E. Corp.*, 518 F.2d 913, 926 (9th
15  Cir. 1975)); *Johnson v. City of Loma Linda*, 24 Cal.4th 61, 68 (2000) (same); *cf. Downs*, 58 Cal.
16  App. 4th at 1100 (equitable tolling may apply to allow second action where: (1) the first action is
17  timely filed; (2) no prejudice to defendants in gathering evidence to defend against the second claim;
18  and (3) good faith and reasonable conduct by plaintiffs in filing the second claim).  The "bare fact of
19  delay creates a rebuttable presumption of prejudice."  *Boone*, 609 F.2d at 958.  Laches may apply
20  either when the delay in bringing suit was caused by a private plaintiff or when the delay is the fault
21  of an administrative agency.  *Brown-Mitchell v. Kansas City Power & Light Co.,* 267 F.3d 825, 828
22  (8th Cir. 2001).

23  The EEOC's action is barred by the doctrine of laches because the EEOC filed this
24  lawsuit after unreasonable delay which prejudiced Defendant.  Stege's motion to intervene with
25  FEHA claims would compound both the unreasonable delay and the prejudice and is, *a fortiori*,
26  barred by laches.

27  ///

28  ///

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

DEF'S OPPOSITION TO CHARGING
PARTY'S MOTION TO INTERVENE          11.          Case No. C 07 3944 SBA

1.    **The EEOC Filed Its Complaint After An Unreasonable Delay Of More Than 26 Months After The Close Of Conciliation; Stege Delayed For 31 Months.**

In *EEOC v. Alioto Fish Company, Ltd.*, after noting that "[l]ess extreme delays may also be unreasonable," the Ninth Circuit found unreasonable delay where the EEOC filed suit 20 months after the end of the conciliation process.[7] 623 F.2d 86, 88-89 (9th Cir. 1980) (*citing EEOC v. Liberty Loan Corp.*, 584 F.2d 853, 857-58 (8th Cir. 1978)). In finding this delay unreasonable, the *Alioto* court specifically rejected the EEOC's workload as an excuse for unreasonable delay. *Id.* (*citing EEOC v. Bell Helicopter*, 426 F.Supp. 785, 793 (N.D.Tex. 1976)). The court focused on the delay "after the conciliation proceedings ended" as the keystone measure of the magnitude of delay which would be found to be unreasonable. *Id.* at fn. 2.

In *Firestone*, the court held that plaintiff-intervenor's claims were barred by the doctrine of laches where plaintiff-intervenor did not file suit until 28 months after the EEOC ended its conciliation efforts and nine months after the EEOC filed suit. 626 F.Supp. at 94. The court held that plaintiff-intervenor's delay was unreasonable and that "the equities strongly favor dismissal of [the] case on grounds of laches[.]" *Id.*

In the instant matter, the EEOC filed suit 26 months after the end of the conciliation process, six months longer than the delay held unreasonable in *Alioto*. Plaintiff-Intervenor Stege filed suit 31 months after the end of the conciliation process, three months longer than the delay held unreasonable in *Firestone*. Critically, neither Stege nor the EEOC has offered any excuse or justification for the delay. Under *Alioto*, as a matter of law, a high workload does not excuse the EEOC's unreasonable delay after the end of the conciliation proceedings. Likewise, neither the EEOC nor Stege can plausibly claim that there was any kind of ongoing "investigation" — the EEOC concluded its investigation in March 2005, regarding a final decision that had been unequivocally communicated to Stege in April 2004. For her part, Stege herself had clearly moved on — she requested, received, and acknowledged that she received a reasonable accommodation in February 2006 which did not even mention mandatory overtime or a 40-hour work restriction.

---

[7] In *Alioto,* the EEOC issued its reasonable cause determination 19 months after the charge was filed and commenced conciliation proceedings ten months after that. *Id.*

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEF'S OPPOSITION TO CHARGING PARTY'S MOTION TO INTERVENE     12.     Case No. C 07 3944 SBA

1

**C.    Georgia-Pacific Suffered Prejudice As A Result Of The EEOC's And Stege's Unreasonable Delay.**

2

3    Courts have recognized two chief forms of prejudice in the laches context:

4    evidentiary and expectations-based. *Danjaq LLC v. Sony Corp.* 263 F.3d 942, 955 (9th Cir. 2001).

5    Evidentiary prejudice includes: (1) lost, stale, or degraded evidence; and (2) witnesses whose

6    memories have faded or who have died. *Id.* (internal citations omitted). A defendant may

7    demonstrate expectations-based prejudice by showing either that it took actions or suffered

8    consequences that it would not have, had the plaintiff brought suit promptly. *Id.* To show prejudice,

9    an employer does <u>not</u> need to show detrimental reliance on plaintiff's delay — for example, that it

10   destroyed records as a result of a belief that plaintiff would not sue. *Pruitt v. City of Chicago,*

11   *Illinois*, 472 F.3d 925, 928-29 (7th Cir. 2006).

12          Courts have found prejudice sufficient to apply the doctrine of laches where:

13   •  Plaintiff's delay "greatly enlarged [employer's] potential back pay liability" (*Alioto*,

14      623 F.2d at 88-89);

15   •  The employer's employment practices had changed significantly since the original

16      charge was filed (*Id.*);

17   •  Managers who hired or supervised the charging party, and/or the charging party's

18      union steward, were retired, elderly, or ill (*Id.*; *Pruitt*, 472 F.3d at 928-29);

19   •  Plaintiff's delay "dimmed the memories" of <u>available</u> witnesses (*Alioto*, 623 F.2d at

20      88-89; *Pruitt*, 472 F.3d at 928-29; *Boone*, 609 F.2d at 957-58); and

21   •  The manager alleged to have discriminated against charging party had moved outside

22      of the district court's subpoena power (*Pruitt*, 472 F.2d at 928-29).

23          Here, as in *Alioto*, the EEOC's and Stege's delay accounts for the lion's share of the

24   potential back pay liability. *See* Section II(F), above. Stege seeks back pay for work she alleges she

25   missed because being required to work overtime exacerbated her medical condition and forced her to

26   take additional time off work. However, seven months of potential back pay liability occurred <u>after</u>

27   Stege received the right-to-sue letter from the DFEH. Moreover, four months of potential back pay

28   liability arose after the EEOC had completed its investigation, determination, <u>and</u> conciliation

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

13.

1   processes.

2          Further, as in *Alioto*, Corrugated made significant changes in its employment

3   practices with respect to Stege since the April 2004 decision to require Stege, on occasion, to work

4   mandatory overtime pursuant to the CBA.   Managers Reyes, Kimbro and Yeager have made

5   continuing efforts to accommodate Stege by allowing her to work in less stressful positions.  *See*

6   Section II(D), above.   Corrugated granted Stege's request for a reasonable accommodation in

7   February 2006 and memorialized its agreement with Stege in a letter — this was 14 months after

8   Stege received her right-to-sue letter and seven months after the EEOC had completed its

9   investigation, determination and conciliation.  If Corrugated had known that the EEOC and Stege

10  would subsequently file lawsuits — 16 months and 21 months <u>later</u>, respectively — or even that

11  there was a possible lawsuit pending, Corrugated certainly would have taken that into account in

12  February 2006.  (*See* Yeager Decl. ¶¶ 2-4, Exhs. A, B).  During Corrugated's meetings with Stege in

13  February 2006, Stege gave absolutely no indication that she intended to file a lawsuit.   (*Id.*)

14  Corrugated believed that it had negotiated a reasonable accommodation that was acceptable to both

15  Stege and the Union — a belief that was amply justified by the signatures on the letter agreement.

16  (*Id.*)  If Corrugated had known that Stege still claimed that the only reasonable accommodation was

17  one which allowed her a strict 40-hour per week schedule, there would have been a different

18  accommodation discussion.  (*Id.*)  In fact, there was no suit or investigation "pending": neither Stege

19  nor the EEOC would file anything with this Court for the 26-month period following the end of

20  conciliation.  In other words, Corrugated took different actions because of the EEOC's and Stege's

21  unreasonable delay in filing suit.  *See Danjaq*, 263 F.3d at 955.

22          Moreover, former union steward Ron Orr has left GP, as have former General

23  Manager Ron Huff and former HR Manager Cheryle Webb-Nelson.  Former Plant Manager Joe

24  McGovern has moved to Iowa and is now beyond this Court's subpoena power.  Former Shift

25  Superintendent Mike Belmessieri is on extended medical leave and has not regularly worked at

26  Corrugated since 2005.  These individuals were interviewed by the EEOC in its investigation which

27  concluded <u>three</u> years ago — surely their memories have dimmed about the events of April 2004.

28  Further, these individuals know nothing about Stege's February 2006 reasonable accommodation or

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

DEF'S OPPOSITION TO CHARGING
PARTY'S MOTION TO INTERVENE                    14.                    Case No. C 07 3944 SBA

1    the 17 months of Stege's employment since that time.

2    In light of all of the foregoing reasons, neither Stege nor the EEOC can rebut the

3    presumption of prejudice created by their unreasonable delay. *See Boone*, 609 F.2d at 958

4    **D.    Stege's Motion To Intervene Against Defendant Georgia-Pacific Holdings, LLC**
5    **Should Be Denied Because Georgia-Pacific Holdings, LLC Has Never Been**
     **Stege's Employer.**

6    As the EEOC recognized when it submitted its First Amended Complaint on January

7    25, 2008, Corrugated is the only proper defendant in this action because Corrugated — not Holdings

8    — employs Stege. The mere fact that Holdings is the indirect sole equity holder of Corrugated is in

9    no way sufficient in and of itself to impose any liability on Holdings for any acts or omissions by

10   Corrugated or any of Corrugated's employees.

11   In the lead California case of *Laird v. Capital Cities/ABC, Inc.*, 68 Cal. App. 4th 727

12   (1998), the plaintiff had been terminated from her position with a subsidiary company, and sued the

13   parent corporation, Capital Cities/ABC, Inc. ("Cap Cities"), for various employment related claims.

14   Affirming a grant of summary judgment in favor of the parent, Cap Cities, on the ground it was not

15   the plaintiff's employer and, therefore, not liable on the plaintiff's claims, the *Laird* Court reiterated

16   the well-established policy and law that the corporate form is entitled to <u>great deference</u>:

17   An employee who seeks to hold a parent corporation liable for the acts
18   or omissions of its subsidiary on the theory that the two corporate
     entities constitute a single employer has a heavy burden to meet under
     both California and federal law. <u>Corporate entities are presumed to</u>
19   <u>have separate existences</u>, and the corporate form will be disregarded
     only when the ends of justice require this result. <u>In particular, there is</u>
20   <u>a strong presumption that a parent company is **not** the employer of its</u>
     <u>subsidiary's employees</u>.
21

22   *Id*. at 737 (emphasis added) (omitted citations include *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1362

23   (10th Cir. 1993) ("The doctrine of limited liability creates a strong presumption that a parent

24   company is not the employer of its subsidiary's employees, and <u>the courts have found otherwise only</u>

25   <u>in extraordinary circumstances</u>") (emphasis added)).

26   **1.    Corrugated Is Stege's Employer Under The Economic Reality Test.**

27   Courts have adopted the "economic reality" test to determine whether a joint

28   employer relationship exists between two corporate entities, and consider whether the alleged

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records. *Bonnette v. California Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983). "[J]oint employment will generally be considered to exist when 1) the employers are not 'completely disassociated' with respect to the employment of the individuals and 2) where one employer is controlled by another or the employers are under common control." *Chao v. A-One Medical Servs., Inc.*, 346 F.3d 908, 918 (9th Cir. 2003) (citing 29 C.F.R § 791.2(b)). The element of control is also central to the determination of whether an entity is an employer in the context of California's wage and hour laws. IWC Wage Order 4-2001 defines "employer" as any person "who directly or indirectly, or through an agent or any other person, employs or exercises *control* over the wages, hours or working conditions of any person." Cal. Code Regs., tit. 8 § 11040(2)(H) (emphasis added). California courts have consistently recognized that the principal test for determining employment relationships is the right of control over the manner or means of accomplishing the results desired. *Singh v. 7-Eleven, Inc.*, 2007 WL 715488, at *7 (N.D. Cal. Mar. 8, 2007) (citing *Isenberg v. Calif. Emp. Stabilization Comm'n*, 30 Cal.2d 34 (1947)); *Wickham v. Southland Corp.*, 168 Cal. App. 3d 49, 54 (1985).

With regard to the first three factors of the "economic reality" test, only Corrugated has the power to hire and fire Stege, to supervise Stege and to determine Stege's work schedule and compensation. All of the facts of Stege's employment show that Corrugated controlled the terms of Stege's employment. Stege has no evidence that Holdings plays a role in any of these actions.

With regard to the final factor of the economic reality test, the maintenance of employment records, Corrugated maintains Stege's employment records. Holdings itself maintains no employment records pertaining to Stege or any other employees at the San Leandro plant. In sum, Stege alleges no facts to support a finding that Holdings is a joint employer of Stege.

## 2.    Corrugated Is Stege's Employer Under The Single Employer Test.

The "single employer" test is used to determined whether a parent company is the putative employer of a plaintiff. That test has four factors: (1) interrelation of operations; (2)

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

common management; (3) centralized control of labor relations; and (4) common ownership or financial control. *Laird*, 68 Cal. App 4th at 737. As the *Laird* court emphasized, by far, the most important factor is the third – centralized control of labor relations. It is the *sine qua non*. Under this factor, a plaintiff must prove that the parent exercises day-to-day control of routine employment matters within the subsidiary:

> The critical question is, '[w]hat entity made the final decisions regarding employment matters related to the person claiming discrimination?' A parent's broad general policy statements regarding employment matters are not enough to satisfy this prong. To satisfy the control prong, a parent must control the day-to-day employment decisions of the subsidiary.

*Id*. at 738 (emphasis added) (quoting *Frank*, *supra*, 3 F.3d at 1363). The *Laird* court held that where a plaintiff fails to meet this critical prong, that failure is fatal to the employee's attempt to establish a joint employer ("integrated enterprise") interrelationship.

The basis for the Court's decision in *Laird* is not new. Indeed, the *Laird* court heavily relied on federal authorities, including, as noted, the leading federal case of *Frank, supra,* 3 F.3d 1357. The *Frank* plaintiff was discharged from Northwestern Bell, a wholly owned subsidiary of U.S. West. Reiterating that there is no joint employment relationship unless the parent company exercises day-to-day control over the employment decisions of the subsidiary, the Court found that the parent corporation did not participate in "routine personnel decisions such as hiring, transferring, promoting, discharging, and disciplining" the subsidiary corporation's employees. *Id*. at 1360.

The *Frank c*ourt recognized that some level of control is inherent in a parent-subsidiary relationship. Accordingly, it held that the mere fact that the management chain of command ultimately led to the parent corporation's president was insufficient to create a triable issue as "this exercise of control is not to a degree that exceeds the control normally exercised by a parent corporation." *Id*. at 1362. Similarly, it was of no consequence that the parent's broad, general guidelines and equal employment policies were applicable to the subsidiary's employees, as this was "in no way evidence [of] an attempt by [the parent] to exercise day-to-day control over employment decisions" of its subsidiary. *Id*. The fact that the parent corporation maintained pension plans and other benefits for the subsidiary's employees also did not show excessive interrelatedness "[b]ecause

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEF'S OPPOSITION TO CHARGING
PARTY'S MOTION TO INTERVENE

17.

Case No. C 07 3944 SBA

1   it is not beyond the normal parent-subsidiary relationship for the parent to serve as ERISA Plan

2   Administrator for the subsidiary." *Id.*  For similar federal rulings, see also, e.g., *Lockard v. Pizza*

3   *Hut, Inc.*, 162 F.3d 1062 (10th Cir. 1998); *Cellini v. Harcourt Brace & Co.*, 51 F. Supp 2d 1028

4   (S.D. Cal. 1999).

5           The undisputed facts show that the corporate entity which controlled Plaintiff's day-

6   to-day employment was Corrugated, *not* Holdings.  Stege has no facts that Holdings was controlling

7   any aspect of her employment.  Corrugated's day-to-day operations at the San Leandro plant,

8   including employment decisions, are controlled by Corrugated managers who are not employed by

9   Holdings.

10          **E.    Stege Has No Facts To Show That Holdings Is The Alter Ego Of Corrugated.**

11          As Stege was not an employee of Holdings under the "joint employer" or "single

12   employer" tests, the only way that Holdings could be held liable for the purported acts of Corrugated

13   is if the Court were to find that Holdings was the "alter ego" of its subsidiary, Corrugated.  Again,

14   Stege neither alleges in her complaint, nor does she have any evidence to support, any "alter ego"

15   theory of liability against Holdings.

16          As a matter of law, the California courts have repeatedly held that "'the corporate

17   form will be disregarded only in narrowly defined circumstances and only when the ends of justice

18   so require.'"  *Laird, supra*, 68 Cal. App. 4th at 737; *Say & Say, Inc. v. Ebershof*, 20 Cal. App. 4th

19   1759, 1768 (1993) (quoting *Mesler v. Bragg Mgmt. Co.*, 39 Cal.3d 290, 301 (1985)).  In addition,

20   "there is a strong presumption that a parent company is not the employer of its subsidiary's

21   employees" unless the parent company exercises control "to a degree that exceeds the control

22   normally exercised by a parent corporation."  *Laird*, 68 Cal. App. 4th at 737-38 (citing *Frank v. U.S.*

23   *West, Inc.*, 3 F.3d 1357, 1362 (10th Cir. 1993)); *see also Mayfield v. Sara Lee Corp.*, 2005 U.S. Dist.

24   LEXIS 42458, at *7 (N.D. Cal. Jan. 13, 2005). That is "[b]ecause society recognizes the benefit of

25   allowing persons and organizations to limit their business risks through incorporation, sound public

26   policy dictates that imposition of alter ego liability be approached with caution."  *Las Palmas*

27   *Assocs. v. Las Palmas Ctr. Assocs.*, 235 Cal. App. 3d 1220, 1249 (1991).  "It is the <u>plaintiff's burden</u>

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

DEF'S OPPOSITION TO CHARGING
PARTY'S MOTION TO INTERVENE          18.          Case No. C 07 3944 SBA

1    to overcome the presumption of the separate existence of the corporate entity." *Mid-Century Ins.*

2    *Co. v. Gardner,* 9 Cal. App. 4th 1205, 1212 (1992) (emphasis added).

3           Before a parent corporation will be deemed the "alter ego" of its subsidiary, a

4    plaintiff is required to establish both of the following:

5           (1) such a unity of interest in ownership exists so as to dissolve the
           separate corporate personalities of the parent(s) and the subsidiary,
6           relegating the latter to the status of merely an instrumentality, agency,
           conduit or adjunct of the former, and (2) an inequitable result will
7           occur if the conduct is treated as that of the subsidiary alone.

8    *Institute of Veterinary Pathology, Inc. v. Cal. Health Labs.,* 116 Cal. App. 3d 111, 119 (1981);

9    *Doney v. TRW, Inc.,* 33 Cal. App. 4th 245, 249 (1995); *Tran v. Farmers Group, Inc.,* 104 Cal. App.

10   4th 1202, 1218-19 (2002), and cases cited therein. Here, Stege cannot satisfy either of these criteria.

11          "Before a corporation's acts and obligations can be legally recognized as those of

12   [another corporation], and vice versa, it must be made to appear that the [first corporation] is not

13   only influenced and governed by [the second], but that there is such a unity and interest and

14   ownership that the individuality, or separateness, of such [corporations] has ceased . . ." *Assoc.*

15   *Vendors, Inc. v. Oakland Meat Co.,* 210 Cal. App. 2d 825, 837 (1962); *see also Bell Atlantic Bus.*

16   *Sys. Servs. v. Hitachi Data Sys. Corp.,* 849 F.Supp. 702, 707 (N.D.Cal. 1994) (alter ego liability will

17   only be imposed where "unity of interest and ownership [are] such that the separate personalities of

18   the two corporations no longer exist").

19          In determining whether there is such a unity of interest that the separate corporate

20   personalities no longer exist:

21          "[a]mong the factors to be considered in applying the doctrine are
           commingling of funds and other assets of the two entities, the holding
22          out by one entity that it is liable for the debts of the other, identical
           equitable ownership in the two entities, use of the same offices and
23          employees, and use of one as a mere shell or conduit for the affairs of
           the other." (*Roman Catholic Archbishop v. Superior Court* [(1971)]
24          15 Cal.App.3d [405,] 411; *Associated Vendors, Inc. v. Oakland Meat
           Co., supra*, 210 Cal.App.2d at 838-839.) Other factors which have
25          been described in the case law include inadequate capitalization,
           disregard of corporate formalities, lack of segregation of corporate
26          records, and identical directors and officers. (*See Tomaselli v.
           Transamerica Ins. Co.* (1994) 25 Cal.App.4th 1269, 1285, [other
27          citations omitted]).

28   *Sonora Diamond Corp. v. Super. Ct.,* 83 Cal. App. 4th 523, 538-39 (2000). "Alter ego is an extreme

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEF'S OPPOSITION TO CHARGING
PARTY'S MOTION TO INTERVENE                19.                Case No. C 07 3944 SBA

1    remedy, sparingly used." *Id*.

2           To disregard a subsidiary's corporate existence, there must be more than just control

3    by the parent company. *M/V American Queen v. San Diego Marine Constr. Corp*., 708 F.2d 1483-

4    90 (9th Cir. 1983). Rather, as noted, Stege must prove "(1) that there is such unity of interest and

5    ownership that the separate personalities [of the two entities] no longer exist and (2) that failure to

6    disregard [their separate identities] would result in fraud or injustice." *Doe v. Unocal Corp.,* 248

7    F.3d 915, 926, 928 (9th Cir. 2001), citing *American Telephone & Telegraph Co. v. Compagnie*

8    *Bruxelles Lambert,* 94 F.3d 586 (9th Cir. 1996), observing that "the Ninth Circuit found no alter ego

9    relationship was created where the parent company [among other things] placed several of its

10   directors on the subsidiary's board, and was closely involved in the subsidiary's pricing decisions."

11   See also *Kramer Motors, Inc. v. British Leyland, Ltd.,* 628 F.2d 1175, 1177 (9th Cir. 1980).

12          Here, there is no reason why Holdings should be held liable as an "alter ego" of

13   Corrugated. Each entity keeps separate corporate minutes and records. Each entity has its own

14   business licenses and respective taxpayer identification numbers. Each entity was formed at

15   different times.

16          Nor can Stege satisfy the second necessary element for a finding of "alter ego" status:

17   that "an inequitable result will occur if [the alleged unlawful conduct] is treated as [the conduct] of

18   the subsidiary alone." *Institute of Veterinary Pathology, supra,* 116 Cal. App. 3d at 119. This

19   element is "critical." *Tomaselli v. Transamerica Ins. Co*., 25 Cal. App. 4th 1269, 1285 (1994); *see*

20   *also Roman Catholic Archbishop v. Super. Ct.,* 15 Cal. App. 3d 405, 411 (1971) (the "alter ego"

21   principle can be applied only if "the facts are such that an adherence to the fiction of the separate

22   existence of the corporation would . . . sanction a fraud or promote injustice"). Stege has absolutely

23   no facts to suggest that the dismissal Holdings from the lawsuit could render an "inequitable result."

24   *See Walker v. Signal Cos., Inc.,* 84 Cal. App. 3d 982, 1001 (1978) ("inequitable result" not created

25   when corporate parent is dismissed from a lawsuit even though plaintiff was thereby unable to

26   "obtain an increased award of punitive damages [based on] the substantial net worth of the parent").

27          Stege will likely try to argue that Holdings and Corrugated are the same entity, noting

28   the common use of the name "Georgia-Pacific." This does not "pierce the corporate veil." For

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108-2693
415.433.1940

DEF'S OPPOSITION TO CHARGING
PARTY'S MOTION TO INTERVENE                    20.                    Case No. C 07 3944 SBA

example, the maintenance by a parent company of employment records for the benefit of its subsidiaries is not sufficient to demonstrate a joint employer relationship under the FLSA. *Catani v. Chiodi*, 2001 WL 920025, *3-5 (D.Minn. Aug. 13, 2001). Similarly, when a parent corporation and its subsidiaries share certain members of their boards of directors, "that fact alone may not serve to expose the parent corporation to liability for its subsidiary's acts." *United States v. Bestfoods*, 524 U.S. 51, 69 (1998); *see also Doe v. Unocal Corp.*, 248 F.3d 915, 926-28 (9th Cir. 2001). Sharing a corporate logo or trade name also does not impose alter ego liability. *Daniels v. Kerr McGee Corp.*, 841 F.Supp. 1133 at 1136-37 (D.Wyo. 1993) (fact that parent and subsidiary used same logo insufficient to overcome strong presumption of limited liability); *Mason v. Burkett*, 756 F.Supp. 679, 683 (D.Conn. 1991) (fact that American Express subsidiary's publications normally feature an American express logo and refer to [the subsidiary] as an American Express company" rejected as insufficient to impose alter ego liability); *Kasprzak v. Amer. Gen. Life & Acc. Ins. Co.*, 914 F.Supp. 144 (E.D.Tex. 1996) (sharing corporate logo, among other factors, not sufficient to make parent liable); *Von Grabe v. Sprint PCS*, 312 F.Supp.2d 1285, 1296-97 (S.D.Cal. 2003) (relationship between subsidiary and its parent corporation did not support personal jurisdiction over parent, under alter ego theory, even though there was shared use of common trademark and trade name, as there was no indication that parent had failed to maintain required distinction between itself and its subsidiaries); *Fidenas AG v. Honeywell, Inc.*, 501 F.Supp. 1029, 1037 (S.D.N.Y. 1980) (unified marketing plan and portraying integrated world-wide operation is consistent with fairly common parent-subsidiary relationship and insufficient to impose alter ego liability).

In sum, Holdings cannot be claimed to be the "alter ego" of Corrugated. Corrugated is a separate and properly maintained corporate subsidiary which is Stege's only employer. Thus, there is no basis for any "indirect" alter-ego liability on the part of Holdings. Further, there is no basis for this Court to hold that Corrugated and Holdings are "joint employers" or a "single employer." Stege's Motion should be denied with respect to Holdings, which is not a proper defendant in this matter.

///

///

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

DEF'S OPPOSITION TO CHARGING
PARTY'S MOTION TO INTERVENE                21.                Case No. C 07 3944 SBA

**IV.    CONCLUSION**

The EEOC's complaint was filed after unreasonable delay which caused prejudice to defendant Corrugated.  Stege's Motion, filed five months later, compounds the unreasonable delay.  Accordingly, and for all of the foregoing reasons, Stege's Motion should be denied because it is barred by laches.

Even if her Motion is not barred by laches, Stege's FEHA claims are barred by the applicable SOL, which expired, at the latest, one year after the EEOC's conciliation efforts became "futile" — June 9, 2006.

Finally, Stege's Motion should be denied insofar as it seeks to add Holdings as a defendant.  Stege has no facts to suggest that Corrugated and Holdings are a "single employer" or that Holdings is an "alter ego" of Corrugated.

Dated: February 12, 2008                Respectfully submitted,


/s/ Margaret Hart Edwards
Margaret Hart Edwards
LITTLER MENDELSON
A Professional Corporation
Attorneys for Defendant
GEORGIA-PACIFIC LLC

Firmwide:84091152.1 053676.1002

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEF'S OPPOSITION TO CHARGING PARTY'S MOTION TO INTERVENE          22.          Case No. C 07 3944 SBA