KATHRYN BURKETT DICKSON, State Bar No. 70636
DICKSON - ROSS LLP
1970 Broadway, Suite 1045
Oakland, CA 94612
Phone: 510-268-1999
Fax: 510-268-3627
E-mail: kbdickson@dicksonross.com

Attorneys for Plaintiff/Intervenor
JANET STEGE

**UNTIED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>Plaintiff<br><br>v.<br><br>GEORGIA-PACIFIC CORRUGATED, LLC,<br><br>Defendant. | **CIVIL ACTION NO. C-07-3944 (SBA)**<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF JANET STEGE FOR LEAVE TO INTERVENE**<br><br>Date: April 1, 2008<br>Time: 1:00 p.m.<br>Courtroom: 3, 3rd Fl. (Oakland)<br>Judge: Hon. Saundra B. Armstrong |

## I. INTRODUCTION.

Georgia-Pacific's opposition brief provides no basis for the Court to reject Janet Stege's motion to intervene. First, Ms. Stege has a statutory right to intervene in this lawsuit as to the federal claims the EEOC has raised, which Georgia-Pacific Corrugated LLC (Georgia Pacific) necessarily concedes. Defendant's Opposition ("Def. Opp." at 9:14-15) Second, Ms. Stege's supplemental parallel state law claims under the California Fair Employment and Housing Act ("FEHA") are timely and should be permitted as they will not increase the litigation or prejudice Defendant.

Additional issues which Georgia-Pacific raises in its opposition, including a laches argument directed at the EEOC and a dispute about the proper Georgia Pacific entity to be named as a Defendant here, are not proper grounds for challenging the motion to intervene.

Nevertheless, with regard to the issue of the proper Defendant, Ms. Stege is willing to revise her proposed Complaint in Intervention to name only Georgia Pacific Corrugated LLC as a Defendant and to not include Georgia Pacific Holdings, LLC. This is based on Georgia-Pacific's representations being accurate and in good faith.[1] In addition, Plaintiff notes that the EEOC and Georgia-Pacific have stipulated and the Court has issued an Order allowing the EEOC to amend its complaint to name Georgia-Pacific Corrugated, LLC as the sole Defendant in this matter. Supplemental Declaration of Kathryn Burkett Dickson in Support of Motion of Janet Stege to Intervene ("Supp. Dickson Dec." at ¶¶ 2-4 and Exh. A).

With regard to the laches argument as to the EEOC's filing of this case, while Ms. Stege believes the original filing of this action was timely under the law, that is an issue that cannot serve as a basis for rejection of Ms. Stege's intervention motion. It is an issue directed to the EEOC, not Ms. Stege.[2]

## II. INTERVENTION SHOULD BE GRANTED AND THE SUPPLEMENTAL STATE CLAIMS SHOULD BE PERMITTED.

### A. Ms. Stege has a statutory right to intervene in this action.

Significantly, Georgia-Pacific concedes, "It is undisputed that a charging party may intervene in an EEOC action." Def. Opp. 9:12-15, citing *General Tel. Co. of the Northwest, Inc. v. EEOC,* 446 U.S. 318, 326 (1980). In addition, the EEOC has filed a statement of non-opposition to this intervention.

Although Georgia-Pacific goes on to challenge the EEOC's complaint based on laches, that argument has no force here because Ms. Stege would have been unable to intervene prior to the filing of an action by the EEOC, and would have been unable to file her own federal action because she had not received a Right to Sue Notice from the EEOC. The Court's focus in this

---

[1] Should discovery reveal that Georgia-Pacific's representations were inaccurate or not made in good faith, Plaintiff will seek leave of Court to amend her complaint accordingly.

[2] Moreover, to the extent Georgia-Pacific believes the EEOC has not acted with sufficient diligence, that is actually another argument in favor of Ms. Stege's intervention. She and her private counsel certainly have an incentive to ensure that the case proceeds apace, which should aid in the case's timely resolution.

motion is whether Ms. Stege timely filed her motion to intervene after the EEOC filed the action. Defendant has known since shortly after this case was filed that Ms. Stege intended to seek advice from private counsel regarding intervention. The initial joint case management statement filed by Defendant and the EEOC on October 31, 2007 (less than three months after the case was filed) makes specific reference to Ms. Stege's intention in this regard. Initial Joint Case Management Statement at 5:16-17. As noted in Ms. Stege's motion to intervene, she met with private counsel on December 28, 2007, less than two months later, and the motion to intervene was filed on January 10, 2008, less than two weeks after she first met with counsel. Pl. Mem. at 5:1-2.

Furthermore, Ms. Stege's intervention will not delay the case. As noted in the motion to intervene, Ms. Stege and her private counsel have agreed to have the case ready by the trial date set by the Court. Since the intervention motion was filed, the parties have scheduled Ms. Stege's deposition and all parties and the Court-appointed mediator have agreed to April 24, 2008 as the date for mediation. This case will proceed on track.

Therefore, based on her statutory right to intervene, the Court should grant intervention as to the federal law claims.

**B. Ms. Stege's state law claims have been timely asserted based on both federal and state law regarding tolling of such claims.**

With regard to Ms. Stege's proposed state claims under the Fair Employment and Housing Act (FEHA), Georgia-Pacific erroneously argues that such claims are not timely. Defendant is wrong as a matter of both federal and state law.

California law generally requires that private suits under FEHA be filed within one year after the Charging Party receives a right-to-sue notice from California's Department of Fair Employment and Housing ("DFEH"). Cal. Gov't Code §12965(b). An exception to this rule allows for the tolling of the limitations period where a charge was timely filed concurrently with EEOC and DFEH, and DFEH deferred the processing of the charge to EEOC, as occurred in this case. In such cases, the "time for commencing an action . . . expires when the federal right-to-sue period to commence a civil action expires," or one year from the date of the FEHA

right-to-sue notice, "whichever is later." §12965(d)(1)-(2); *see Downs v. L.A. Dep't of Water & Power*, 58 Cal.App.4th 1093, 1102 (Cal.App. 1997) (tolling lasts "until a right-to-sue letter from the EEOC is received").[3]

In this case, section12965(d)'s tolling factors were satisfied since DFEH deferred Ms. Stege's timely FEHA charge to the EEOC. *Se*e, Stege Charge, Exhibit C to Edwards' Declaration dated February 2, 2008. Thus, the issue here is whether Ms. Stege's motion to intervene with FEHA claims was filed before her federal right-to-sue period expired. It clearly was.

Under §706(f)(1) of Title VII, an individual who has filed a charge with the EEOC may bring a private action if the EEOC has not entered into a conciliation agreement or brought an enforcement action within 180 days after her charge was filed. 42 U.S.C. §2000e-5(f)(1). The individual normally must file suit within 90 days of receiving notice from the EEOC that one of the above-mentioned conditions has occurred. *Id.* This notice, commonly referred to as a "right-to-sue notice" must clearly and explicitly "inform [the] claimant that she had 90 days to bring a civil action." *Scholar v. Pacific Bell*, 963 F.2d 264, 266 (9th Cir. 1992). Only such explicit notice triggers the 90-day limitations period. *Missirlian v. Huntington Mem'l Hosp.,* 662 F.2d 546, 549 (9th Cir. 1981). Ms. Stege never received such a "right to sue" notice and no 90-day period for filing an action was triggered.

---

[3] Defendant misrepresents *Downs* and other cases, by failing to acknowledge their holdings that the tolling period lasts not just through the EEOC's investigation and conciliation efforts – *but, rather, until the EEOC issues a notice of right to sue*. *See e.g.,* Def. Supplemental Opp. 2:22-28. As noted above, *Downs* specifically refers to the tolling period ending when the notice of right to sue is issued. The same is true in the case of *Salgado v. Atlantic Richfield Co.,* 823 F.2d 1322, 1325-26 (9th Cir. 1987), also cited by Defendant in its supplemental memorandum (Def. Supp. Opp. 2:24-26). Once again, Georgia Pacific misleadingly implies that the tolling period ends with unsuccessful conciliation – but the case actually says "This statute of limitation was tolled until July 31, 1984 when the EEOC completed its investigation *and issued its right-to-sue letter*." (emphasis added). The trial court opinion in *EEOC v. Firestone Tire and Ruber Co.,* 626 F.Supp. 90 (M.D.Ga., 1985), cited by Defendant is inapposite based on its facts. There, the delay from incident to filing was five years and the EEOC and intervenor had taken no action to prosecute the case during the ensuing six years it was pending. The facts here do not begin to approach the eleven year delay at issue in that case.

Georgia-Pacific argues that the limitations period for Ms. Stege's state claims began running upon issuance of a letter informing Ms. Stege of the failure of efforts to conciliate her charge. *See*, EEOC letter regarding failure of conciliation, Exhibit A to Edwards' supplemental Declaration dated March 10, 2008. In essence, Georgia-Pacific contends that this letter is the equivalent of a "Notice of Right to Sue." However, the letter lacks a critical element, as it does not "inform [Ms. Stege] that she had 90 days to bring a civil action" nor is it denominated a "right to sue" notice. *Scholar* 963 F.2d at 266. Simply stated, the letter does not constitute sufficient notice to trigger the start of the limitations period for filing suit. This is clear from the letter which reads, in pertinent part, as follows:

> If the Commission decides that it will not bring a civil action based on your charge, you will be notified and sent a Notice of Right to Sue, which will entitle you to sue the Respondent in Federal District Court."

Georgia-Pacific misleadingly construes this letter as the equivalent of a "right to sue" notice. By its own terms, it is clearly no such thing. Indeed, the letter makes plain that a Notice of Right to Sue had not been issued and would not be issued until the EEOC had completed its review of the matter and determined that it would not sue. At that point, the Right to Sue notice would be issued and Ms. Stege would then have had ninety days to bring her own action.

As the Commission elected to sue based on Ms. Stege's charge, she was not issued a "Notice of Right to Sue." The Ninth Circuit has explicitly held: "[w]e measure the start of the limitations period from the date on which **a right-to-sue notice letter** arrived at the claimant's address of record." *Payan v. Aramark Mgmt. Servs. Limited Partnership,* 495 F.3d 1119, 1122 (9th Cir.2007)(emphasis added). Ms. Stege never received such notice; thus, there is no applicable statutory limitations period to her intervention into this lawsuit with regard to her state claims.[4] Indeed, Title VII does not specify a limitations period within which complaints-in-intervention — or EEOC enforcement actions — must be filed. *EEOC v. Occidental Life Ins. Co.*, 432 U.S. 355 (1977) (no limitations period on EEOC actions).

[4] Georgia-Pacific is protected from otherwise stale claims by the mechanism of laches. However, as explained below, Georgia-Pacific has failed to demonstrate that laches is appropriate in this case.

Courts addressing this issue have rejected the arguments Georgia-Pacific asserts here, holding that when "the statutory condition for the termination of the tolling period [delivery of Notice of Right to Sue] did not occur, there is no legal basis for a claim that the FEHA claims are time-barred." *See e.g., EEOC v. Kovacevich "5" Farms,* 2006 WL 3060149, at *11-12 (E.D. Cal. 2006). The court in that case went on to explain that such a "result is consistent with the statutory purpose of California Government Code §12965(b), avoidance of unnecessary filings in state and federal courts, economy in centering the claims in one court, and the absence of prejudice because [Defendant employer] had full notice of the claims and the ability to investigate." Georgia-Pacific's arguments would lead to just such duplicative proceedings in federal and state courts, and should be rejected on that ground as well.

**C. Although the doctrine of laches does not apply since Ms. Stege's federal and state claims were timely asserted, there is no basis for applying the doctrine in any event.**

As discussed above, Ms. Stege's federal and state claims were timely filed under the applicable statutes, and there is therefore no basis for a laches argument. Even if the Court were to address the issues of laches, the relevant factors militate against applying the doctrine in any event.

The state and federal law claims arise from the same underlying facts. Georgia-Pacific was aware of these underlying facts at the time they occurred in the Spring of 2004, and less than seven months later the company became aware that Ms. Stege had filed administrative charges raising issues of disability discrimination and failure to accommodate. The company was on notice as of that time that it needed to investigate, gather, and preserve information – including identifying and interviewing witnesses and gathering and preserving relevant documents – related to such claims. At no point from that time until the present has the company been informed that either Ms. Stege or the EEOC was dropping or did not intend to pursue such claims.

Despite Defendant's pleas to the contrary, there is no undue prejudice to Georgia-Pacific from any delay in the initiation of this action or Ms. Stege's intervention. As noted above, the

company was on timely notice of Ms. Stege's complaints of discrimination and failure to accommodate. Both the EEOC and Georgia-Pacific have had access to and presumably timely interviewed the necessary witnesses. The memories of witnesses concerning those events can be refreshed by interview notes or statements taken by the EEOC and the company (and presumably its counsel), as well as by documents, statements of other witnesses, and so forth.

The company's claim that it is somehow prejudiced because "back pay" liability has been enlarged as a result of the delay, has little resonance since Ms. Stege has been and remains currently employed by the company – she has not been terminated and she has not quit. Def. Opp. 13:23 - 14:1. While she is claiming some monetary damages because of additional leave she has had to take as a result of the failure to accommodate her (i.e., the company's failure to limit her overtime), that liability is significantly offset because she received a substantial percentage of her pay during that period.

The fact that Ms. Stege sought an additional accommodation related to a change in machines in February 2006 did not diminish her need for the accommodation of no overtime since it is critical that she obtain regular rest for her muscles and nerves due to her fibromyalgia. Although the company now claims that it would have reacted "differently" to her request for a change in machines as an accommodation in February, 2006, the company never indicates what that "difference" would have been or how it was prejudiced in any way by the additional request. Def. Opp. 14:2-21. Furthermore, Defendant's opposition itself acknowledges that the company was on continuous notice of Ms. Stege's ongoing need for accommodation, claiming that "Managers . . . have made continuing efforts to accommodate Stege by allowing her to work in less stressful positions." Def. Opp. 14:4-5. Defendant's opposition also nowhere identifies any statement by Ms. Stege that she no longer needed the accommodation of not working overtime. She has never retreated from any such position and the company knows that. She has worked overtime solely because the company has required her to do so at times, on pain of losing her job and her benefits.

Simply put, the company has failed to established that any prejudice will flow from Ms. Stege's intervention on the federal claims or by the addition of the parallel state claims. They were timely filed and there is no basis for applying the doctrine of laches to bar her claims.

**III. CONCLUSION.**

For all the reasons set forth above, Plaintiff/Intervenor Janet Stege respectfully requests that her motion to intervene in the instant action be granted, and that she be permitted to file the revised Complaint in Intervention attached as Exhibit A to the Supplemental Declaration of Kathryn Burkett Dickson (which is similar to the original proposed Complaint in Intervention, except that it names only Georgia-Pacific Corrugated LLC as Defendant, and eliminates Georgia-Pacific Holdings, LLC as an additional Defendant.).

Dated: March 18, 2008 *DICKSON - ROSS LLP*

By: /S/ Kathryn Burkett Dickson
Kathryn Burkett Dickson
Attorneys for Plaintiff/Intervenor
JANET STEGE